**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-20-00485-01-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Austin Ryan Steinbart, | |
| Defendant. | |

Before the Court is Defendant Austin Ryan Steinbart's "Expedited Motion for Reconsideration of Pretrial Detention Decision Due to New Information and Previous Reliance on Erroneous or Incomplete Information." (Doc. 116) Defendant seeks reconsideration of the Magistrate Judge's Pretrial Detention Order. (Minute Entry 59, Doc. 61) The Court has received the United States' Response in Opposition ("Response") (Doc. 119), the accompanying exhibits, and Defendant's "Reply to Prosecution's Response to the Motion to Reconsider" ("Reply") (Doc. 124).

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was first arrested in March of 2020. He was released with conditions on April 3, 2020. (Doc. 13) Defendant was arrested on April 23, 2020 for violating his release conditions by lying about his employment. (Minute Entry 21) Defendant was found to not have violated the conditions and was released into the custody of Sarah Steinbart on April 28, 2020.  (Doc. 26) A psychiatric examination was also ordered. (Doc. 26) On June 26, 2020, a hearing was held before Magistrate Judge Deborah Fine reminding Defendant of

the conditions of his release, as there were two more reports filed detailing Defendant's pretrial release violations. (Minute Entry 49, Docs. 47, 48) Defendant was again arrested for violating his release conditions on September 1, 2020. (Doc. 57) That time, he violated his pretrial release by failing a drug screening by using or possessing a prosthetic penis filled with urine and admitting to using marijuana and drinking alcohol. (Doc. 57) Magistrate Judge Michelle Burns ordered Defendant into custody after finding him unlikely to abide by any conditions of release. (Doc. 61) Defendant was indicted on September 22, 2020 on three counts of wire fraud, one count of interstate communications with intent to extort, and one count of identity theft. (Doc. 63) Defendant then filed a Motion to Reopen Detention Hearing on October 21, 2020. (Doc. 86) Magistrate Judge John Boyle denied the Motion. (Doc. 88)

After a *Faretta* hearing held on October 26, 2020 (Minute Entry 92), Defendant's appointed counsel was withdrawn. (Doc. 93) He now represents himself with the help of appointed standby counsel James Paul Buesing. (Doc. 93)

On November 1, 2020, Defendant filed a "Motion to Modify Conditions of Release Due to Change of Circumstances." (Doc. 108) That Motion was denied by this Court after a finding that Defendant would be likely to violate the conditions of his pretrial release again, in line with the previous findings of the magistrate judges. (Minute Entry 113, Tr. at 95:2–6)

Defendant's trial was continued on November 3, 2020, to promote the ends of justice, to provide Defendant with more time to prepare an adequate defense and to account for possible hinderances due to the COVID-19 pandemic. (Doc. 114 at 4–5) Trial is currently set for February 16, 2020. (Doc. 114 at 5)

Before the Court now is Defendant's "first" Motion for Reconsideration of the detention order. (Doc. 116) Defendant argues that the previous detention decisions were based on "erroneous or incomplete information" and that his right to access resources necessary to his defense outweighs the need for detention. (Doc. 116 at 2–7) He also makes arguments as to the COVID-19 pandemic. (Doc. 116 at 7–10) The United States argues in

response that the record supports the decision to detain Defendant, that Defendant "fails to meet the standard for his untimely motion to reconsider," that Defendant has failed to show that temporary release is necessary for trial preparation, and finally, that COVID-19 conditions do not warrant release. (Doc. 119 at 1)

## II.     LEGAL STANDARD

Arizona Local Rules of Criminal Procedure follow the Local Rules of Civil Procedure for the purposes of filing Motions, Memoranda, and Objections. LRCrim 12.1. Under LRCiv 7.2(g)(2), motions for reconsideration must be filed within fourteen (14) days of the date of the Order that is the subject of the motion, absent good cause shown. Additionally, motions for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). "Mere disagreement with an order is an insufficient basis for reconsideration…. Nor should reconsideration be used to ask the Court to rethink its analysis." *United States v. Bernal*, No. CR-12-01627-PHX-DGC, 2013 WL 4512355, at *1 (D. Ariz. Aug. 26, 2013), *aff'd*, 599 F. App'x 694 (9th Cir. 2015) (internal quotations omitted).

## III.    DISCUSSION

As a threshold matter, Defendant's Motion for Reconsideration is untimely. It was filed more than two months after the Order it seeks to have reconsidered. (Doc. 61) Defendant does not address the untimeliness of the Motion in either the Motion or the Reply, instead merely stating that his detention status should be reviewed *de novo*. (Doc. 166 at 5, Doc. 124 at 6) Because Defendant filed a Motion for Reconsideration the proper standard is as stated above.

Despite its untimeliness, the Court will address the Motion on the merits. Although Defendant characterizes this Motion as his "First Motion for Reconsideration" of the detention order, practically speaking it is not. As outlined above, he filed a Motion to Reopen Detention Hearing and a Motion to Modify Conditions of Release, both seeking release from custody, both of which were denied. *See supra* I. Defendant argues that new

facts are present that warrant his release and that the Court based its earlier decision on "erroneous or incomplete information." (Doc. 116 at 2)

### A. Alleged error by the magistrate judge

Defendant argues that Judge Burns misconstrued the record as to his violations of his release conditions. (Doc. 116 at 4–5) Not so. Defendant effectively asks the Court to rethink what it already thought when it initially concluded that he was at risk of further violations. The Court already examined the record and determined Defendant could not be trusted out of custody. It has now done so thrice. (Docs. 61, 88, 114, Minute Entry 113) Even reviewing the detention *de novo*, there is nothing Defendant has presented that changes the Court's analysis as to this issue. He has not proven he is any less likely to violate the conditions of his release now than he was earlier this year.

### B. Arguments under the Bail Reform Act 18 U.S.C. §§ 3141 *et seq*.

Defendant argues he cannot adequately prepare his defense while in custody. (Doc. 116 at 5–7) After a defendant has been detained prior to trial, a court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4).

The Court previously considered Defendant's need for release to prepare his defense at the November 2, 2020 hearing. (Minute Entry 113) The Court at that time found that Defendant would have sufficient time to prepare while in custody since his trial would be continued. (Doc. 114) Even reviewing his status *de novo*, the Court has found nothing has changed. In fact, Defendant now has more time to prepare, due to the continuance of his trial.

Defendant argues he still is unable to prepare in custody. (Doc. 116 at 5) He states he has been unable to access the law library, is working only with pen and paper, that it was up to the prosecution to request a computer for him, that he cannot get in contact with witnesses, cannot review discovery, and has a difficult schedule. (Doc. 116 at 5–7)

First, to clarify, at the November 2, 2020 status conference and hearing, the attorney for the United States seemed to be asking the Court to provide a computer for Defendant, and the Court stated first, "Mr. Knapp, that's something that you and Mr. Steinbart need to talk about," then stated "Everything needs to be in writing," when the government attorney asked whether the Court provides laptops to defendants. (Minute Entry 113, Tr. at 105:3–4,21–22) The Court did not and will not direct the government to request a computer for Defendant. Furthermore, as discussed below, Defendant is well aware of the options available to him to prepare for his case at CoreCivic, the detention center where he is currently held.

Second, as to the United States' Response: The government presents evidence that Defendant has received the exhibits and witness list from the government and has the ability to review the materials with his standby counsel. (Doc. 119 at 8) More importantly, the government shows that Defendant has not actually attempted to access the legal resources available to him. (Doc. 119 at 9) The government includes an affidavit from an assistant warden at CoreCivic, that states that Defendant has not sought access to the legal research terminals, despite the process having been explained to him more than once. (Doc. 119-6 at 4)

As to Defendant's arguments in his reply brief about possible juror bias (Doc. 124 at 10), first, it is improper to raise new arguments in a reply brief unless they are based on new evidence, and then the opposing side must be given the opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Here, Defendant presents no new evidence as a basis for his arguments. The prohibition on new arguments aside, Defendant will be able to cure the potential bias through *voir dire* and the use of strikes.

The Court is satisfied that if Defendant takes the time to access the resources available to him and uses the assistance of his standby counsel, he will be able to prepare a more than adequate defense.

**C. Arguments as to the COVID-19 pandemic**

Finally, Defendant argues that the COVID-19 pandemic and the conditions in

CoreCivic warrant his release. (Doc. 116 at 7–10) Defendant previously used COVID-19 as a basis for each of his other attempts to be released. (Doc. 86 at 1–2, Doc. 108 at 2) Each time, the Court found it insufficient. The COVID-19 pandemic has been ongoing since before the time of Defendant's initial arrest. The Court's sister district, the District of Nevada, has devised a test for pretrial releases under 18 U.S.C. § 3142(i) based on the COVID-19 pandemic. *United States v. Terrone*, 454 F. Supp. 3d 1009, 1022 (D. Nev. 2020). The Court finds this test persuasive and will use it to help its evaluation of the COVID-19 situation as it applies to Defendant. Courts evaluate the four following factors, weighing them equally:

> (1) the original grounds for the defendant's pretrial detention;
>
> (2) the specificity of the defendant's stated COVID-19 concerns;
>
> (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and
>
> (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* Here, Defendant was not originally held in detention. He was later put in detention for violating his pretrial release conditions by consuming drugs and alcohol, and because the Court found him highly likely to violate the conditions again, if he remained out of custody. (Doc. 61) Defendant's COVID-19 concerns are stated as follows: the number of inmates testing positive for COVID-19 has risen, those housed near Defendant have been placed on quarantine but quarantine protocols are not being obeyed, other COVID-19 protocols are not being obeyed, and infection rates are rising faster in federal detention facilities than in the population at large. (Doc. 116 at 7–9, Doc. 124 at 7) On the other hand, the affidavit from the assistant warden at CoreCivic states that there have been no COVID-19 cases in the pod in which Defendant is housed, nor were there any cases in the unit in which Defendant was previously housed in the time was there. (Doc. 119-6 at 3) The affidavit also states that the COVID-19 protocols are being followed and that the affiant is unaware

of any complaints made by Defendant as to the protocols. (Doc. 119-6 at 3–4) Defendant requests home detention as his release. (Doc. 116 at 1) The risk of Defendant contracting COVID-19 on release is high as the number of positive cases steadily rises. For the same reason, the risk of Defendant spreading it to others is high as well. Having considered the above factors, as well as the fact that Defendant has not exhibited any signs of COVID-19 thus far (Doc. 119-6 at 3), and the fact that CoreCivic is taking the proper steps to mitigate the spread of the disease (Doc. 119-6 at 3–4), the Court finds that the COVID-19 pandemic is not a sufficient ground for release under 18 U.S.C. § 3142(i).

Therefore, no good cause appearing,

**IT IS ORDERED** denying Defendant's "Expedited Motion for Reconsideration of Pretrial Detention Decision Due to New Information and Previous Reliance on Erroneous or Incomplete Information." (Doc. 116)

Dated this 4th day of December, 2020.

Honorable Steven P. Logan
United States District Judge